[Crim. No. 15938.  Second Dist., Div. Five.  Dec. 3, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR MANUEL ESPARZA, Defendant and Appellant.

## COUNSEL

Richard S. Buckley, Public Defender, Steven Kaye and James L. Mc-Cormick, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—Esparza was charged with violations of section 11500 of the Health and Safety Code (count I) and section 11721 of the Health and Safety Code (count II). A motion under section 995 of the Penal Code was denied. He pleaded not guilty. A motion under section 1538.5 of the Penal Code was submitted on the transcript of the preliminary hearing, plus additional testimony. The motion was denied. Esparza then changed his plea to guilty on count I. On motion of the People, the remaining charges were dismissed. Proceedings were suspended and probation granted, contingent upon certain terms and conditions including a requirement that Esparza spend the first nine months in jail, the sentence to run concurrently with that in an unrelated case. He appeals from the judgment, as he is permitted by section 1538.5, subdivision (m) of the Penal Code. A purported appeal from an order denying a motion for a new trial must be and hereby is dismissed.

At about 9 a.m. on March 6, 1968, Officer Frigo of the Montebello Police Department received a radio call, based on a telephone complaint,

that there was a suspicious vehicle containing two male occupants of Mexican extraction parked in front of 833 Carmelita and that the same vehicle had been in the same location at about the same time the previous day. Frigo drove to the location in his marked police vehicle and parked behind a red Chevrolet in which were two men fitting the description as far as it went. Frigo started out of his car to approach the Chevrolet. Both of its occupants looked back toward the police car, then faced forward again. The passenger door of the Chevrolet opened. Frigo observed Nunez, the driver, make an "outward" movement with his right arm from his upper chest area, then saw an object come out the open passenger door and roll onto the parkway. Esparza, who was seated in the passenger seat, left the car a second or two later, walked around the front of the Chevrolet and then back toward the police car. Frigo believed Esparza was going across the street, although he was walking in his general direction.[1] In any event, Frigo asked Esparza where he was going. Esparza said he lived across the street and was going to reassure his sick mother that there was nothing seriously wrong. Frigo asked him for some identification. Defendant produced identification which showed he did, in fact, live across the street.

By this time a back-up police unit had arrived. Nunez had left the Chevrolet. Frigo asked Nunez and Esparza to remain at the location while he retrieved the object Nunez had thrown from the car. It proved to be a narcotics kit. Frigo advised both that they were under arrest for illegal possession of paraphernalia. Frigo searched Nunez. He then approached Esparza in order to search him. As he did so he observed him place his left hand down by his knee and open it; a white object fell to the ground. Frigo retrieved it and found that it consisted of white paper wrapped around a balloon containing what later proved to be heroin. He then advised Esparza that he was under arrest for possession of heroin.

Esparza conceded at the 1538.5 hearing that Frigo had sufficient ground to detain him for investigation based upon the radio call and his and Nunez' conduct after Frigo's arrival. He argued, however, that Frigo had no grounds for arresting him when he found the kit; that he, therefore, had no grounds for searching him; and that the recovery of the heroin was the fruit of his unlawful attempt to do so. The crucial factor, of course, is whether Frigo had reasonable cause to believe that Esparza had been in joint possession of the kit which Nunez threw from the car. In this connection the court stated: "The Court choses to believe that the officers acted reasonably here and that they assumed that these men who had been together, according to the report, these men that were found together in this circumstance, and *when one of them opens the door that he did so to allow*

---

[1] Esparza later testified that he was going to see what the officer wanted.

*the other one to dispose of something which he knew, possibly knew, was unlawful to possess,* and therefore the officers I think acted reasonably. . . ." (Italics added.) Having drawn the reasonable inference that Esparza opened the door to facilitate the disposition of the kit, the officer was justified in drawing the further inference that this conduct indicated joint possession.

The instant case thus differs from *United States* v. *Di Re,* 332 U.S. 581 [92 L.Ed. 210, 68 S.Ct. 222]; *People* v. *Simon,* 45 Cal.2d 645 [290 P.2d 531]; and *Pinizzotto* v. *Superior Court,* 257 Cal.App.2d 582 [65 Cal.Rptr. 74], relied on by defendant, in that in none of these cases was there any conduct by the defendant which indicated joint participation with a companion in an activity which admittedly supplied probable cause for the arrest of the companion. The distinction is slight, but crucial.

The judgment is affirmed. The purported appeal from the denial of a new trial is dismissed.

Aiso, J., and Reppy, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 28, 1970.